Lalanne vs. Savoy.

No. 988.

DOMINIQUE LALANNE VS. FRANÇOIS SAVOY, PRESIDENT POLICE JURY, ET AL.

The police jury of a parish is liable for any actual damage caused to a neighboring· inhabitant, by building any work of public convenience that obstructs an un- navigable water-course; but the jury will not, if the work be of great conveni-· ence to the inhabitants of the vicinage, be compelled to remove it.

APPEAL from the Eighth Judicial District Court, parish of St. Lan-· dry. *Hudspeth, J.*

*John N. Ogden* and *A. Bailey*, for defendants and appellants.

*Joseph M. Moore*, for plaintiff.

The opinion of the court was delivered by

DEBLANC, J. In 1870 a dam was built and became a highway across· the mouth of Bayou Toulouse in the vicinity of a small tract of land then belonging to Mrs. Henry Lastrapes. Shortly after the completion of the dam, Dominique Lalanne purchased from Mrs. Lastrapes the land so situated, and—on the tenth of May, 1876—filed this suit.

He alleges that the dam obstructs a natural drain which runs through his land, and he prays that defendants, the local representatives of the· parish of St. Landry, be, in their official capacity, condemned to pay him, as damages, the sum of $2500, and, besides, that they be com- manded to remove the aforesaid dam. According to his own declaration,. plaintiff has remained for nearly six years, witnessing the gradual de- struction of his property.

The district court allowed him, as damages, the full value of his land, and ordered the removal of the dam. From that decree defendants. have appealed.

Among the powers delegated to the police juries in the State, one of the most important is that "to cause any water-course which is not. navigable to be filled up for the purpose of carrying the public highways over the same, providing no injury be thereby occasioned to the neigh-· boring inhabitants." Revised Statutes, section 2743, No. 13.

Bayou Toulouse is not navigable; and, so far as relates to its condition,. it is one of those that may be filled up, and over which the police jury had the right to carry the public highway.

In the language of the statute, have the neighboring inhabitants suf- fered from the action of the police jury ?

Of the proprietors of that section of the parish, only one is before the· court, and that one acquired the land he owns in that locality after the building of the dam. He was sworn as a witness in his behalf, and among other things he said : "Before buying the land I visited it several times during low water, in the summer and fall. I know the Toulouse

Lalanne vs. Savoy.

·swamp; the bayou is the only drain for that section. With the exception of fifteen acres, the water thrown on my land has killed all my timber."

This is his own acknowledgment; he knew the swamp; he crossed the dam, and by merely casting a look on the ground which extends from the dam to the swamp he could have ascertained that then, as before, his land was·subject to overflow. Nor is this all. His vendor and the inhabitants of that locality were certainly informed that, by virtue of an ordinance of the police jury, a levee would be erected across the Toulouse, and, nevertheless, they did not oppose any objection to either the project or its execution.

Can the inhabitants of a State, a parish, a city, a village, acting through ·their delegated agents, build causeways, bridges, and dams, and there-.after—denying the delegated authority—claim damages resulting to them from the acts of their own agents, from acts acquiesced in and ratified by an unbroken silence of nearly six years? They may; but on the .ground, and none other, that in a matter of public necessity or public ·convenience, a right to them belonging has been abridged or destroyed; and that—on that account—they are entitled to a compensation proportioned to their.loss.

Adopting that rule and applying it to this case, what is the extent of ·the loss suffered by plaintiff? Has he lost his land? He has not; but let us suppose he had. What is its value? He said twenty-five dollars, a disinterested witness said twenty-five cents, defendant, from two to three dollars an acre. The only value of that land consists of its timber, and the amount allowed to plaintiff by the lower court covers all ·that the land is worth, and, necessarily, the loss actually suffered.

We refrain from expressing any opinion as to the nature and extent of _servitude_ which may be due from one another by estates situated in the _middle_ or on the border of swamps, and on which, at regular periods, ·the water comes and flows from and in every direction. We leave for the future the discussion of that important question.

As to the plaintiff, he retains his land, on fifteen acres of which the trees have not been affected, and—besides—he will receive the entire value of the land. He can not ask, he can not expect, more; with that, his right of action against the parish is exhausted.

As to the dam, it may be an object of general utility, and, as regards its removal, we differ in opinion with our respected brother of the district court. If in so doing we are mistaken, our error can easily be corrected by the interested parties through the action of their police jury.

It is therefore ordered, adjudged, and decreed that the judgment of ·the lower court be annulled, avoided, and reversed, but so far only as it orders the removal or opening of the dam constructed at the mouth of Bayou Toulouse, and that in other respects said judgment is affirmed;

the costs of the lower court to be paid by defendants in their official capacity, the costs of the appeal by plaintiff.

DISSENTING OPINION.

EGAN, J.   I concur in so much of the decree as reverses the judgment of the lower court which directed the demolition of the dam in question. I dissent from so much of the decree of this court as affirms the allowance of damages by the court below to the plaintiff in this case.    The right to damages, if any, existed in favor of the vendor of the plaintiff, the person who owned the land at the time the dam was constructed and the bayou stopped.   That right is not in my opinion one which runs with the land, like a servitude, in favor of any future owner.   If the bayou constituted a servitude before, it ceased to do so after, the construction of the dam under authority of the police jury, and no other right remained except to compensation to the then owner.   If the plaintiff's vendor did not lay claim to damages herself, then plaintiff, to whom she only transferred the land with the dam already built, and to whom she did not transfer her right to compensation or damages growing out of its construction, can not recover them in her stead.   This would seem the more just and reasonable, as, if there was damage or apprehension of damage from the stoppage of the bayou and construction of the dam, the plaintiff doubtless got the benefit of it in his purchase at a correspondingly diminished price.

MARR, J.   I concur in this dissenting opinion.